Please call the next case. 114-0527 Michael Stupay v. Esther Decker & Co. Counsel, you may proceed. Good morning, Justices. Counsel. May it please the Court, my name is Mark Parker and I represent the petitioner, Michael Stupay. As the Court knows, Mr. Stupay was a 31-year-old painter who injured his right foot and ankle when he came down off a falling scaffold on February 18, 2009. We've raised two claims of error in the Commission's award. First, the Commission's denial of $52,000 in medical expenses. And secondly, the Commission's reduction of the arbitrator's award of temporary total disability down from 162 weeks of TTD to 53 and a fraction weeks. First, the issue of the so-called two-doctor rule, which I think should more appropriately be called the two-referral chain rule. The Commission raised the issue on its own motion. I think a fairly compelling waiver claim can be made. But I do address that in my brief, and unless there are any questions about it, I think I will stand on my brief for reasons of time constraints. I will state that the petitioner did not exceed his permissible physician choices under Section 8A. The petitioner's first choice of physician was Dr. Farrell, an orthopedic surgeon. His second choice was Dr. Tierman, a podiatrist. Dr. Tierman determined that the petitioner required treatment from a neurologist and pain specialist, and gave him a general referral to a neurologist and pain specialist. Well, did he give a referral? He didn't name any specific individual or medical treatment, correct? That's correct, Your Honor. He specifically testified that he did not refer him to Dr. Kelley. That's correct. That was his testimony. So your guy went on Google and winds up at Dr. Kelley. Is there any evidence in this record other than Dr. Kelley's letterhead that he is either a neurologist or a pain specialist? Yes. Where? Well, he administered an EMG. That's a neurologic test. In Illinois, if you're a physician licensed to practice medicine in all its branches and you provide neurologic treatment, you can hold yourself out as a neurologist. You do? The Board may have something to say about that. Board certification is not a matter of licensure, at least not in Illinois. So if I'm a family practitioner, I can hold myself out as being a neurosurgeon? I think you're licensed to perform neurosurgery, Your Honor, not that I would necessarily hold you. Do you know of any hospital that would let you in the door? That's another issue. What's another example or aspect of the evidence pointing to him as a pain management specialist? He administered pain management treatment. That's really similar to the EMG portion of it. On his letterhead, he holds himself out as offering pain management services. Well, specifically as to that, tell us exactly what it says on the letterhead. Health Benefits Pain Management Services is the name of the group. Okay, the name of the group. So it doesn't say that he himself is offering those services. It's just he's using that letterhead. He's a member of the pain management services medical group. So if his letterhead doesn't specify that, I'm trying to give you a point, it does do. And your backup physician as well, if he does these tests anyway, somehow that closes the gap. He did it, so it's self-evident that he is qualified to perform these tests. Who relies on that as a test? Well, Your Honor, the petitioner received a referral to a neurologist and pain management specialist. Admittedly, the general referral, Dr. Tiernan testified he didn't know of anybody specifically, so he gave him the general referral, which, by the way, has been recognized both by this court in the Lander-Courier case and by the commission in a host of cases, which I know are not precedential, but certainly it shows that the commission recognizes a general referral as sufficient to keep a doctor in the chain. And I think this court has held that a general referral is sufficient so long as there's no evidence of doctor shopping. Did Courier actually involve a referral? As I recall, Judge, Your Honor, I believe it did. What happened in Courier was she went to a doctor who said, I can't treat you. I can't treat you. I will not give you any services. Obesity. And so she went to another doctor, and they said, well, wait a minute. When a doctor says, I won't treat you, that's not a choice of physician. There was no referral in Courier, general or otherwise. I would submit, Your Honor, that it's analogous. And the reason it's analogous is here we have a situation where Dr. Tiernan said, you're in need of this treatment, but I don't know somebody who I can specifically refer you to. Well, it's not analogous because Tiernan treated her, and he was a choice. In Courier, they said the doctor said, I won't treat you, was no choice at all. Courier doesn't have anything to do with a generalized referral. I take your point, Your Honor. But the similarity is that in both cases she was in need of further care. Tiernan couldn't refer her to anybody else specifically, but he gave her the general referral. And as I indicated, the commission has dealt with that fact pattern before. In any event. Tell us what you testified to about this blue rule, sir. Sure. It led him to the Illinois Physicians Network. Yes. But then did he testify that he put in neurology and came up with a list, and Kelly was on that list? Did he say all that, or did he just say it at Google? No, he didn't use the word Google. I think that was counsel's characterization in his brief. He said he received a referral to a neurologist and pain management specialist. He got on the Internet and found the Illinois Physicians Network. And through Illinois Physicians Network, obtained the name of Dr. Kelly or health benefits, pain management, which brings up an important point. My question is, was there anything specific in his testimony about he searched under neurology or pain management? I believe he said he searched for networks. Well, and did he testify that Dr. Kelly was either a neurologist or a pain management specialist? I think that inference can be drawn. I don't know if he specifically testified to what the doctor's specialty is. Did he testify that he thought Dr. Kelly held himself out as such? Well, I think that's the only inference that can be drawn, Your Honor. I think an inference can be drawn, but it also can't be drawn, or doesn't have to be drawn. Well, therein lies the problem, isn't it? You're asking us to draw the inferences. Isn't that up to the commission to draw the inferences? Aren't they the fact finder and doesn't the claimant have the burden of proof here? Well, I think the problem, Your Honor, is that the commission on its own raised this issue. Now, suppose the commission raised the issue of whether Dr. Kelly was a doctor when that defense was never offered, either at trial or before the commission or wherever. How did he raise it? Dr. Turner testified. Tell me if this is wrong. He did not refer the claimant to Dr. Kelly or prove his choice. He also testified he didn't know who Dr. Kelly was or how the claimant found him. There was no testimony in the record of any evidence establishing Dr. Kelly's credentials or the type of medicine he practiced, other than referred to as M.D. Is that all true? There is a written referral from Dr. Tiernan to a neurologist and pediatric specialist. Generally speaking, right. Yes. Yeah, I mean, that's the extent of the referral. I'll grant that point. I'm not claiming that Dr. Tiernan referred him by name to Dr. Kelly. If we are required to prove in every case that the doctor is a medical doctor, for example, I mean, what? Gosh, I could draw a letterhead holding myself out as a medical doctor. And if the commission is going to challenge that in every case, I suppose in every case we have to produce licensure and so forth. Why wouldn't the claimant's testimony alone? If the claimant here testified Dr. Kelly was a neurologist or Dr. Kelly was a pain management specialist, wouldn't that suffice? And I think that essentially is what his testimony was. He was referred to a neurologist and pain management specialist, not to any specific individual, got on the Internet and found this doctor. That's the essence of his testimony. Well, Counsel, I have some other issues here. So rather than spending an entire 15 minutes on a referral issue, you also challenged the patient's denial of medical benefits for the claimant's treatment of his lower back. Correct? What's the issue there? Most of the treatment was related to the chronic pain syndrome, which was diagnosed as complex regional pain syndrome. Almost all of the pain treatment pertained to the CRPS rather than the back. Almost no of those were related solely to the back. I made March 21st of 2011 MRI. I think that's about it. Dr. Kelly stated that the majority of the patient's symptoms, stated on March 31st of 2011, of radiating pain were related not to his herniated lumbar disc, but rather to the CRPS, which the doctor said stemmed from his right tarsal tunnel syndrome and tenosynovitis. Dr. Kelly explained that the CRPS would not improve until the tarsal tunnel surgery was performed. That was also recommended by Dr. Geeran. That was the reason he referred the petition to a pain specialist. Excuse me. You and Dr. Vinci, the Respondent's Examiner, agreed... You have a section in your brief that I find terribly interesting. You have a phrase that says, Given that the Commission did not adopt Dr. Vinci's opinion that petition was capable of full-duty work return as of March 3rd, 2010, one must struggle to find any legal significance in the supposed timeline between March 3rd, Vinci's exam, and March 17th. You wrote that? Yes.  On March 3rd, 2010, Petitioner underwent a Section 12 examination by Dr. Vinci. Dr. Vinci found Petitioner to be both at MMI and to be capable of resuming his career as a painter. Does that seem to be at odds with what you wrote? They're summarizing Dr. Vinci's testimony. No, it's in the section where they're talking about limiting his TTD to end on March 3rd. I understand they cut off TTD on March 3rd, Your Honor. My recollection of the Commission's determination was they cut off TTD based on the timeline because they found that although the Petitioner testified that he requested light duty immediately after the Vinci exam, the Commission found that he didn't inquire about a return to employment until after March 17th when he saw Dr. Tiernan and requested and received a release to retire. I understand that. They discussed that also. But you seem to say they didn't rely on Vinci's opinion. That's exactly what they relied on because he's the one who fixed MMI on March 3rd. And yet, Your Honor, the Commission adopted the arbitrator's finding that the condition had not stabilized even by February 4th of 2011, which was the day Dr. Condilli's recommended surgery. But MMI is different than stabilized. MMI means there's nothing more that can be done for him medically, period. And Vinci said that as of March 3rd he was there, and March 3rd is the day that the Commission cut off his TTD. TTD gets cut off when MMI arises. I don't think that's a very candid statement in your brief, Counsel. Well, I take exception. And the reason I take exception is the Commission also found, although they didn't order the treatment because they perceived a two-doctor problem, they found that the surgery recommended by Condilli's was necessary to treat the injury. Then they went on to say, but we can't award him the treatment because we find he's outside the chain. I think from that, one can only infer that the Commission's finding that he's not at maximum medical improvement. Condilli's surgery was what type of surgery? Dr. Condilli's recommendation prescribed a tarsal tunnel release, which was the same surgery that was prescribed by Dr. Tiernan. And even Dr. Kelly agreed he needed the tarsal tunnel release and said that his pain syndrome wouldn't improve until he had it. So let's assume Vinci's opinion conflicted with Condilli's and Dr. Kelly. Let's assume, for the sake of argument, you're correct. Does that necessarily carry the day in favor of the claim? With his conflicting medical evidence? Does the number outweigh the Commission's ability to weigh the evidence? I don't know that the Commission adopted Vinci's opinion. Even Vinci admitted that the patient had a pain syndrome that required treatment. He wouldn't call it CRPS, but he agreed he had a pain syndrome. He agreed that the pain syndrome was a consequence of a bad surgical result. The surgery was, of course, a consequence of the original injury. There's no break in the causal chain. So I'm not sure where the conflict is, Your Honor. Counsel, you can connect yourself. I thank you for your attention. Counsel, you may resign. Thank you. Please, the Court, Mr. Berber. This is a manifest weight issue, and the Commission was free to pick whatever medical opinion it desired, draw reasonable inferences from the evidence, which are supported by the record. With the initial finding, the arbitrator and Commission specifically found that the back, thoracic, and spinal cord stimulator treatment were not related. In support of that is the incident report that only referenced the right ankle. All the treatment records, including the work hardening, only referencing the right ankle. The Commission was free to reject all that treatment, which consisted of $39,583.98 in medical bills. That was properly denied. With respect to the issue of TTD, that also is, of course, a question of fact for the Commission to decide. He seems to be saying the Commission really didn't rely on anything specifically. Didn't they adopt Vinci's opinion? As Justice Hoffman pointed out, right on the Commission decision, they adopted Vinci, found him capable of level work as a painter, and also on page 4, they said, Commission finds Petitioner's testimony not to be credible, and he's terminated as of the date of Vinci's exam, if not earlier. And even the labor representative, Commissioner Terrell, also agrees that TTD was properly terminated March 3, 2010. Now, what we basically had in this case was an ankle sprain. I believe all the MRIs were chronic. I don't think Turnin ever should have been to surgery. The Commission filed against me on that issue. That's also a manifest weight issue. But Turnin in January said, I have no orthopedic or neurological basis that gives me an explanation to explain this patient's symptoms, so there's nothing more I can do for him. Therefore, go see somebody else. He also sent him for an EMG January 12, and the neurologist who did the EMG found his strength 5 over 5 in a negative EMG. So after Vinci releases him to regular duty work at Opines, he's at MMI, he makes no attempt to go back to the employer to do regular duty work. What he does instead, he runs back to Dr. Turnin on March 17, and says, give me a note that restricts me to doing desk work only. And Turnin admits he never even examined him on that date. That's why the Commission finds petitioner not credible relative to the return to work. Now, CONSO in its brief argues interstate scaffolding. This is not an interstate scaffolding case, because interstate scaffolding involved where each doctor admitted the employee was only capable of light duty work and was terminated. This employee was released to regular duty work. So whether there may be some need for some future medical treatment doesn't entitle a person to TTV if the Commission specifically found that they're regular duty work. You could not be at MMI, you may need surgery for carpal tunnel in the future, but you may be capable of working up until that date of surgery. So whether he's stabilized and if they said he needed tarsal tunnel, that doesn't mean in the interim the Commission could not reasonably find that he was capable of doing his regular duty work and therefore was not temporarily disabled. They also had the vast amount of videotape that an inference can be drawn, since I argued this, of April 6, showing him walking, April 23, shopping in Walmart for 29 minutes without sitting down, pushing a cart, loading groceries, using a weed whacker to trim his lawn. Also, December 1, December 3, December 4, showing snow, walking with no assistive device, fancy exam in the second time system. You're saying that that additional evidence corroborates the five minutes? Absolutely, Your Honor. Let me ask you this. The opposing counsel spent a great deal of time on the issue that the Commission erred when it found a court that exceeded the permissible number of positions under 8A of the Act. So cutting to the chase, what's your best argument why that rule was not binded? I didn't weigh the argument first off. Well, I'm not saying you didn't. Right, because it's a 19B1, and if you look at the Commission rules... There's a comment, like we've got a case on it that says it's not weighted. Well, in the Commission rules, you can't weigh it because you file a petition for review. You don't even have the transcript. You have to file your brief within 15 days. And I argued in front of the Commission. I argued in front of the arbitrator. But he definitely did exceed. And again, this is a question of fact. It's been held for the Commission to determine. And it's clear his first doctor was he elected not to go to Papula, the emergency room 72, when we went to Dr. Farrell on his own, who we had treated with in the past. He went and treated with a friend of his wife. Dr. Ternan was his second choice. And Dr. Ternan basically said, there's nothing I can do for you. Go see somebody else. Now, with respect to Justice Stewart's question, if there's any evidence in the record that he testified that Dr. Kelly was a neurologist for pain, there is none. The testimony on the record is on page 595, and he admitted he did a Google search and found Dr. Kelly. But Russell's burden is to prove that he didn't exceed the choice of two doctors. He did not elect to take Dr. Kelly's deposition. I objected to his reports. Even arbitrator Mason found Dr. Kelly a little bit out there. But he could have taken his death. He could have got a CV from Dr. Kelly to prove if, in fact, he is a neurologist, or even if Petitioner had testified that I looked under neurologist or pain management. But the record is void of that. It's his burden. In the United States, they can't assume. They have to rely upon what's on the evidence. So the commission decision was also correct with him exceeding the two doctors. And really what that two-doctor decision amounts to, it amounts to about $12,000 in medical bills that were denied because of it, and Petitioner testified that he has group insurance as well, to which he could be submitted to. So I would submit that there's ample support for the commission decision. They specifically found him capable of record-duty work. Interstate staffing doesn't apply. There's ample evidence that supports the commission decision. And I would request that this court affirm it in its entirety. Thank you, counsel. Counsel may reply. Very briefly, Your Honors. I would like the court to note that the commission did not find that there was no referral. The commission found that the general referral to a neurologist and pain management specialist was satisfactory provided that the petitioner saw a neurologist or pain management specialist. So the whole issue revolves around the commission's determination that we didn't prove Dr. Kelly was a doctor, that we didn't prove Dr. Kelly was a pain management specialist. Are you saying you specifically proved it? I don't think any other inference can be drawn. He provided pain management treatment. His letterhead says pain management specialist. The name of his group is a pain management specialist. So the name in the letterhead controls that decision. Well, there's no evidence to the contrary, Your Honor. I think the commission has to give effect to uncontroverted evidence. Regarding the low back treatment, I think the vast majority of the treatment was in fact directed at the chronic pain condition. It did involve treating the back, but as Dr. Kelly and Dr. Tiernan both pointed out, the treatment was directed at the pain syndrome, not directly at the low back. As far as the petitioner requesting a light-duty slip from his doctor, we make no apologies for this. He felt he was incapable of returning to full duty. After he was released by the Section 12 examiner, he went back to his treater and requested that the doctor place him on restrictions. I don't think there's anything untoward about that. He went back and asked for a slip that would contest Finsey's findings, is what he did. And the commission found petitioner's testimony concerning his attempt to resume working to be not credible and concludes petitioner's condition of being temporary and totally disabled ceased on March 3, 2010, the date of the Section 12 examination, if not earlier. And my question would be... Nance not relying on Finsey's opinion? Well... Yes or no? Well, no, because what the commission based it on was the so-called timeline. And they found him incredible as to the timeline. They said, well, we don't believe that he made the call right after the Finsey exam. We think he made the call after the Tiernan exam. But they concluded that he reached MMI as of the date Finsey said he reached MMI, March 3rd. And he specifically said the date of the Section 12 examination. And yet they also found his condition hadn't stabilized by 2011 and found the surgery necessary, although not awarded because of the two-doctor rule. I don't think that... A fair reading of the commission decision, I don't think would hold that the commission found this man capable of returning to the full duties of a painter. In sum, I realize I'm out of time. We would ask that the court set aside the commission's reduction of TTE and award the medical expenses and revamp the case to the commission with those directions and for further proceedings. Thank you, counsel. We are adjourned.